McNAIR, Appellant, v. DODGE, surviving administrator of DODGE, dec., Appellee.

1. The act of the General Assembly of the territory of Missouri of January 20, 1816. (1 Territorial Laws, p. 441,) providing that "all letters of administration, *heretofore* granted, &c., shall be recorded, &c., and that the same shall not be admitted in evidence, unless so recorded, was intended merely to furnish a rule of evidence, and the repeal of that law was a repeal of the rule. The act of January 12, 1822, (1 T. L., p. 922, sec. 13,) as well as the subsequent laws on the subject of administration, were not intended to have a retrospective operation.

2. Possession of letters of administration by the person to whom they purport to be granted, is at least *prima facie* evidence of delivery.

3. The right of an administrator to sue is not barred by the statute of limitations.

4. The 5th sec. of the act of Dec. 22, 1824, concerning "marriage contracts" (R. S. 1825, p. 526,) was not intended to embrace marriage contracts made before the change of government, i. e. 10th March, 1804.

Appeal from St. Louis Circuit Court.

GEYER for Appellant.

SPALDING & RISQUE for Appellee.

MAY TERM.
1842.

McNair
v,
Dodge.

*Opinion of the Court, delivered by Napton, Judge.*

Henry Dodge, surviving administrator of Israel Dodge, deceased, brought an action of detinue against Margaret S. McNair, to recover the possession of three slaves, named in the declaration. The defendant pleaded, first, non detinet; second, limitation of five years; third, ne unques administrator; and fourth, that the plaintiff was not lawfully possessed of said slaves, or either, as alleged in declaration. The fourth plea was demurred to, and the demurrer sustained; issues were taken upon the other pleas, and were all found for plaintiff, and judgment rendered accordingly.

On the trial, the plaintiff gave in evidence letters of administration, granted the 26th September, 1806, by John Bte. Valle, judge of probate for the district of Ste. Genevieve. These letters purported to issue to *Harry Dodge* and George Bullitt, and to be under the seal of the probate court of said district, though only a scrawl, with the word seal written within it, was annexed. A deposition of said Valle accompanied the letters, stating that the letters were issued by him as judge of probate; that *Harry* Dodge is the same Henry Dodge who is now governor of Wisconsin; that George Bullitt is dead; and that the seal attached to the letters was his private seal, no seal of office having been provided.

The plaintiff then gave in evidence a marriage contract between Israel Dodge and Catharine Camp, widow of Jean Bte. Guion, acknowledged before Ch. D. Delassus, the lieut. governor of Upper Louisiana, on the 17th January, 1804; and proved by John Ruland, the recorder of St. Louis county; that the paper was among the Spanish archives deposited in his office; that it was indexed as such by his predecessor in said office, and had been among said archives ever since he, the witness, had been recorder, until it was brought into court upon the trial. End rsed on the back of said paper is a certificate of said recorder, that the same was filed for record on the 5th September, 1837. By the provisions of this contract, the slave Violette, the mother of the slaves

sued for, was given to the wife during her life, and if she died without children, to revert to the husband, Israel Dodge, and his heirs.

It was further proved, that the marriage was afterwards consummated; that said Israel Dodge and his wife resided at Ste. Genevieve, in the district of Ste. Genevieve, until the death of said Dodge in 1806 ; that no child was born of said marriage, but that Dodge had several children by a former marriage, among whom was Henry Dodge, the plaintiff.

It was proved that Mrs. Dodge claimed the negro woman, Violette, *after the death of her husband*, and continued in possession of her and her children for several years, until, in the year 1830, she sold and delivered the slaves to the plaintiff in error. There appears to be no dispute about the *bona fide* character of the sale, and that it was made for a valuable consideration ; it is therefore unnecessary to set out the testimony offered on that point.

The judgment of the circuit court is sought to be reversed, because of the admission of illegal testimony ; and because, admitting the facts to be as found, the law arising on them is for the plaintiff in error.

The act of the general assembly of the territory of Missouri of January 20, 1816, (1 Territorial Laws, p. 441) providing that "all letters of administration, heretofore granted, &c. shall be recorded," &c. and that the same shall not be admitted in evidence, unless so recorded, was intended merely to furnish a rule of evidence, and the repeal of that law was a repeal of the rule. The act of Jan. The act of Oct. 1, 1804, was in force in the territory, when those letters were granted. That act provided for the appointment of a judge of probate in each district, whose duty it was to take proof of last wills and testaments, and to grant letters testamentary, and letters of administration. The 4th section provided, that the judge should record last wills and testaments, and *make entries* of the granting of letters testamentary and letters of administration; but no provision is made for recording letters of administration or letters testamentary, nor is any particular form prescribed, in which such letters were to be issued. See Hempstead's Digest, p. 125. The act of January 20, 1816, provided, that "all letters of administration and letters testamentary, heretofore granted in pursuance of any law in force in the territory, shall be recorded in the clerk's office of the circuit court of such county," and the clerks are *directed to* certify on said letters that the same have been recorded according to law. It was further provided by this act, that no letters

MAY TERM.
1842.

McNair
v.
Dodge.

of administration, made before its passage, should be admitted in evidence in any court of law or equity, unless they were recorded in the manner directed by that act. The 13th section of the act of 1822 merely provides that all letters testamentary and of administration, before they are delivered to the executor or administrator, shall be recorded, and the clerk shall certify on the letters, that they have been so recorded. It further declares that letters, unless so recorded and certified, shall not be received in evidence. This provision is substantially the same with that which was adopted in the revision of 1825, and in the subsequent revision of 1835.

12, 1822, (1 T.
L. p. 9-2, sec
13,) as well as
the subsequent
laws on the
subject of administration,
were not intended to have
a retrospective
operation.

The act of 1816 is the only one containing any retrospective provision, and the section containing that provision was not re-enacted in the act of 1822, nor in any subsequent law. The act of 1816 is not now in force. That act was not intended to extinguish any *right* which had accrued under the act of 1804, but merely to furnish a rule of evidence. The repeal of that law is therefore a repeal of the rule, and there is nothing in the present administration law which appears to be designed to operate on proceedings had under former laws, with a view to affect their admissibility in evidence. The act of 1822, as well at the subsequent laws on the subject of administration, are merely directory of the forms to be observed under them, and they must be construed like other laws, not to intend a retrospective operation.

The letters of administration granted by John Bte. Valle, in 1806, must then be regulated by the act of 1804, which was in force when these letters issued. It has been seen that the law of 1804 did not require the letters to be in any particular form, nor did it require them to be under seal, or to be recorded; nor was there any thing in the unwritten law then in force in the territory, which required such letters to be under seal.

It has been objected by counsel, that there is no proof of any delivery of these letters to Dodge, the administrator; but the court are of opinion, that his possession of these letters is at least prima facie evidence of that fact, and no

Possession of
letters of administration
by the person
to whom they
purport to be
granted, is at
least prima facie evidence of
delivery.

MAY TERM, 1842.

McNair
v.
Dodge.

The right of an administrator to sue is not barred by the statute of limitations.

proof being offered to rebut that presumption, it must be held conclusive.

I am not aware of any statute of limitation which bars the right of action by an administrator, or renders null his letters. In this case it is clear there could have been no final settlement of all the estate and interest of Israel Dodge until after the death of his widow, when certain reversionary interests for the first time became available to his administrator.

The admissibility of the marriage contract in evidence, is a point that was not much insisted on in the argument. This contract was what has been termed by the supreme court of the United States an authentic act; it is a solemn agreement entered into by the parties, before the lieu. governor of the province, in the presence of the relatives and friends of both parties, by all of whom, together with the public officer, it is attested. I am satisfied, without reference to our act of assembly of February 1, 1839, concerning evidence; some of the provisions of which may provide for this case, that upon general principles, such an instrument must be admissible in evidence, whenever accompanied with satisfactory proof of its genuine character. The certificate of the recorder, that it has been duly recorded in his office, is prima facie proof that the original produced, with such certificate endorsed, came from the archives of the Spanish government, because the recorder is only authorised to record such documents as are found in the archives, and to give out the original to any party interested. But in this case we have the additional testimony of the recorder, that the paper offered in evidence was found in the Spanish archives, and so marked and filed by his predecessor in office, and that the same had never left the archives until it was brought into court on the trial.

A more serious question is raised upon the effect of this document in relation to notice. The act of December 22, 1824, declares, "that all marriage contracts heretofore entered into, may be recorded in the like manner as such contracts hereafter entered into, and from the time of recording the same, shall (as to all property affected thereby, with-

in the county in which it is recorded) impart full and perfect notice to all persons, of the contents thereof; and no such marriage contract, which shall not be recorded within six months after the taking effect of this act, shall be valid or binding, or in anywise affect any property, real or personal, (except between the parties thereto, and such as have actual notice thereof,) until the same shall be deposited with the recorder of the county, wherein such property is situated, for record." If this provision was intended to embrace marriage contracts made before the change of government, it is clear that the plaintiff below was not entitled to recover, without the proof of actual notice. But I am led to the belief that this was not the design of the act, for several reasons.

In the first place, the marriage contract before the 10th March, 1804, was a solemn public act, attended with all the forms prescribed by the laws and usages of Spain, and imparted notice to all the world. It is not very clear, that the legislature of this State would impair, or anywise alter or modify the rights which have accrued under such a contract. Whether the legislature had any power to pass a law of this character, however, is a question upon which I mean to intimate no opinion of my own, much less of the court; but it is sufficient that such a question would arise. The probability of raising a question of this kind presents a strong ground for believing that if the legislature in passing the act of 1824, had in view marriage contracts entered into under the former government, they would have embraced such contracts in express terms. But the language of the act may be entirely operative, without affecting these contracts under the Spanish government; it will embrace all contracts made since the 10th March, 1834, up to the passage of the act.

The 5th sec. of the act of Dec. 22, 1824, concerning 'marriage contracts,' (R. S. 1835, p. 526,) was not intended to embrace marriage contracts made before the change of government, i. e. 10th Mar. 1804.

Moreover, a vast deal of property, both personal and real, as is well known, is secured by these Spanish documents, deposited in the Spanish archives. Yet the legislature, in all their acts relating to these papers, appear to have aimed merely to facilitate their introduction as evidence into our courts, but have in no instance (unless this clause in the act

MAY TERM.
1842.

McNair
v.
Dodge.

of 1824 be one) attempted to modify or restrict the rights acquired under them, or to impose new terms upon the parties interested. They appear to have been viewed as at least *quasi* records; and it is difficult to see how any transfer of them to *books* of records, kept and made up in the American style, would give them any additional validity. Hence, the acts of assembly *authorising*, not *requiring*, their record, appear to have been designed solely to make them more accessible and more easy of proof. If the act of 1824, concerning marriage contracts, was designed to embrace such as were made prior to the change of government, it is an entire anomaly in the history of our legislature, and for that reason I cannot give it such a construction, when its terms are completely carried out by a more limited construction.

Entertaining this view of the effect of the marriage contract between Israel Dodge and his wife Catharine, it is unnecessary particularly to review the instructions of the court. The instructions given embodied the correct principles of law, applicable to the facts of the case, and there was no error in refusing those asked by the defendant.

Some stress has been laid on the long possession of Catharine Dodge, which was upwards of thirty years; but upon the construction which the court is disposed to give to the marriage contract, it is clear, that her possession is not adverse; no rights accrued to the representatives of Israel Dodge until the death of his widow, which was less than five years before the institution of this suit.

Another fact may be considered a fair argument in favor of this construction. It is known that these marriage contracts are chiefly in a foreign language, and when the act of 1824 was passed, there existed perhaps twenty counties in this State, nine-tenths of the population of which were totally unacquainted with their language. The recording of these Spanish contracts would therefore have been a solemn mockery of notice, unless the legislature had also provided for their translation.

Judgment affirmed.