WILKINSON *et al.*, Appellants, *vs.* ROZIER, Respondent.

1. Spanish marriage contracts are within the meaning of the act of December 22, 1824, requiring all marriage contracts to be recorded within six months from the taking effect of the act, in order to affect titles, except as between parties thereto and persons having actual notice.

*Appeal from Perry Circuit Court.*

*Noell* and *Frissell*, for appellants. 1. On the death of Marie Pratte, the community created by the marriage contract was dissolved, and one half of the community property became, *by title absolute and irrevocable*, the property of her heirs, subject only to the payment of the community debts. 2. During the existence of the community, the husband was the agent through whom the property was to be applied to the payment of the community debts; but after its dissolution by the death of the wife, the application could not be made by the husband, but must be made by the intervention of the law. *Brousard* v. *Bernard*, 7 Lou. Rep. 222. *Hart* v. *Foley*, 1 Lou. Rep. 378. *German* v. *Guy*, 9 Lou. 583. *Moreau* v. *Detchemendy*, 18 Mo. Rep. 522.

*G. E. Young*, for respondent. 1. The property in controversy did not enter into the community, because it was acquired by Pratte after the act of 1824, requiring all marriage contracts to be recorded, and was transferred by him while the contract was yet unrecorded. R. C. 1825, p. 526. *Lafarge* v. *Morgan*, 11 Martin, 527. Ib. 554. 2. By the Spanish law, the community property was subject to the payment of the community debts, and in the absence of any law in force at the time of the dissolution of the community, prescribing the mode in which the application was to be made, the husband, who held the legal estate, might make the application, and a conveyance by him in payment of the community debts, when shown, is a bar to the claim of the wife's heirs.

SCOTT, Judge, delivered the opinion of the court.

This was an action in the nature of an ejectment, to recover possession of lands to which the plaintiffs allege they are entitled. The defendant denies the right of the plaintiffs, and derives title to the premises through the father of the plaintiffs. The claim of the plaintiffs rests on a marriage contract entered into between Joseph Pratte and Marie Valle, their ancestors, on the 4th February, 1797, at the village of Ste. Genevieve. By this contract, it was stipulated that all acquisitions made during the marriage should enter into and become a part of the community property, and on the dissolution of the community by the death of either party, his or her share of the community should go to his or her heirs. By two deeds, dated respectively in 1830 and 1837, Joseph Pratte acquired the legal title to the lands in controversy; consequently, they were community property, as Mrs. Pratte did not die until the year 1841, leaving the plaintiffs, her children, as her heirs at law. After her decease, in 1842, Joseph Pratte, by deed, mortgaged one of the tracts of land in dispute under which it was passed to the defendant. The other tract was conveyed by Joseph Pratte in 1842, in trust to secure the payment of a debt due by him, and the defendant derives title under this deed of trust. The plaintiffs, who are seven of the eleven children of Joseph Pratte and Marie Valle, their parents, claim seven-elevenths in one half of each of the two tracts, as heirs of their mother, who, by the marriage contract, was entitled to one half of all the estate acquired during the marriage.

1. The marriage contract between Joseph Pratte and Marie Valle was never recorded in pursuance to the fifth section of the act of 22d December, 1824, entitled " an act concerning marriage contracts," which enacted that all marriage contracts, heretofore entered into, may be recorded in the like manner as such contracts hereafter entered into ; and from the time of recording the same shall, ( as to all property affected thereby,

within the county in which it is recorded,) impart full and perfect notice to all persons of the contents thereof, and no such marriage contract which shall not be recorded within six months after the taking effect of this act, shall be valid or binding or in any wise affect any property, real or personal, (except between the parties thereto, and such as have actual notice thereof,) until the same shall be deposited with the recorder of the county wherein such property is situate, for record.

In the case of *McNair* v. *Dodge*, 7 Mo. 404, it was held, that Spanish marriage contracts, made prior to the transfer of Louisiana to the United States, were not within the provisions of the act above cited; consequently, that they were valid against subsequent purchasers, although they were not recorded. In looking into that case, it will be perceived that the point of notice was not involved in it, and that the opinion is supported on the facts of the case, without any inquiry into the fact of notice. The case involved the title to a slave, who was sold by. one having only a life estate in the slave, and the suit was brought by the remainder man, after the termination of the life estate, against the purchaser. It is clear that, in such a case, the question of notice was unimportant, as the purchaser, whether with or without notice, could obtain no greater interest in the slave than was possessed by his vendor.

As the opinion in *McNair* and *Dodge* was delivered long after the period within which Spanish marriage contracts were required to be recorded, in order to save their validity as against subsequent purchasers, no complaint can be made by those interested that they were lulled into security, and neglected to record their contracts in consequence of it, if we should now question its correctness.

The pretensions set up by those claiming under the contract involved in this suit, the incidents asserted as belonging to it, overriding all our laws regulating the transmission of the titles to real estate, arrest our attention and cause us to deliberate whether the general assembly could have designed to omit the recording of instruments, the ignorance of the contents of which

may so seriously affect the interests of innocent purchasers. The plaintiffs claim that, by virtue of a marriage contract, made in 1797, they, as heirs of their mother, on her death, in 1841, acquired the legal title to one half of the lands conveyed to their father during the existence of the community, although the title to those lands vested in him alone, and has been conveyed away by him to purchasers for a valuable consideration, without notice. The pretension is that, after the dissolution of the community by the death of the mother, the legal title to one half of the lands acquired by the husband during the marriage, though the deeds for these lands were made to him alone, vested in the heirs of the mother, and that his conveyance, subsequent to her death, was ineffectual to convey away their interest to a purchaser for a valuable consideration, without notice.

Without acquiescing in the correctness of the opinion which attributes such force and effect to a marriage contract made under the Spanish laws, we are of the opinion, that the act of 22d December, 1824, above cited, includes the marriage contract in question, and that the pretensions now set up for such instruments, is a strong argument in support of such a construction of that act.

It is clear that the existence of Spanish marriage contracts was within the legislative knowledge of this state. The frequency of their occurrence among the early French inhabitants of this state must have been known to our legislature in 1824. The act of the 18th of June, 1808, section 5, shows that the existence of such contracts had been recognized by legislative acts. The reference to marriage contracts heretofore made in pursuance to any "laws, usages and customs now in force in this territory," clearly indicate that contracts made under the Spanish law were intended. If we suppose that a knowledge of the existence of such contracts was possessed by the general assembly, when it was enacted " that all marriage contracts heretofore entered into" should be recorded, we must be led to the conclusion that Spanish marriage contracts were included,

Wilkinson *v.* Rozier.

without regard to the time when such contracts were made. There is no reason why those made prior to the change of government should not be included, as well as those made subsequently. Such an act was clearly within the constitutional powers of the state legislature. Nothing is more common than to prescribe limitations to actions on contracts already made, or to require deeds already in existence to be recorded. Such legislation did not affect the treaty of Louisiana. These contracts are within the words, and they are also within the reason of the act; why then should they not be construed to be embraced within its meaning? As to the argument that they were in a foreign language, and would not have been understood had they been recorded, it may be answered, that the opinion in the case cited makes them notice to all the world in a foreign language, though unrecorded. If unrecorded in a foreign language, they would be notice; surely the putting them upon record, though in a foreign language, would facilitate the diffusion of a knowledge of their contents.

The case of *McNair* and *Dodge* might have been decided without broaching the question of the construction of the act of 1824. That case did not present the consequences of holding that Spanish marriage contracts were not comprehended by the act, so forcibly as they are presented in the case under consideration; nor was it of a character to show the full operation of the act, as then construed; under such circumstances, it is not surprising if considerations were overlooked, which should have had their influence in determining the question.

This view of the case destroys no right growing out of the contract; it affects no right secured by the treaty, but postpones the claim of the plaintiffs to that of a fair purchaser, in consequence of the failure to record an instrument by which notice might have been imparted to that purchaser. The other judges concurring, the judgment is affirmed.