Taylor et al. *v.* Thorn,' Adm'r.

*Dean & Forgey,* for the motion.
*Neal & Cherrington,* contra.

---

Matilda Taylor et al. *v.* Elihu Thorn, Administrator of the Estate of William Taylor, deceased.

1. As between the estate of a deceased debtor and the creditors thereof, the statute of limitations does not run against their claims, after they have been presented to, and allowed by, the executor or administrator.

2. The fourth section of the homestead act, as amended May 1, 1871 (68 Ohio L. 106), does not authorize the assignment of a homestead to a widow, in the lands belonging to her deceased husband at the time of his death. The only right to a homestead in such lands is created by the third section of said act.

3. The administrator of T., who died insolvent, applied in 1853 to the probate court for, and procured an order to sell the lands of T. to pay

debts. T. having left a widow and minor children, unmarried, and composing a part of his family, a homestead in said lands was set apart for their occupancy, by metes and bounds. All the remaining property of the decedent, both real and personal, was sold, and the proceeds applied to the payment of the debts against the estate, leaving a per centum of said debts unpaid. In March, 1876, the children of T. having arrived at full age, said administrator, by supplemental petition, applied to said probate court for an order to sell the premises so set apart for such homestead, for the purpose of paying the unpaid balance of said debts: *Held*, that the administrator was entitled to such order.

MOTION for leave to file a petition in error to reverse the judgment of the District Court of Greene county.

In May, 1853, Elihu Thorn, as administrator of the estate of William Taylor, applied to the probate court of Greene county for an order to sell the real estate of his intestate to pay debts. His petition set forth that the personal effects of the decedent only amounted to about thirteen dollars in value, and that the debts owing by the deceased amounted to about $1,500. Upon hearing, the order was allowed, and in its execution, the intestate having left a widow, Matilda Taylor, and minor children, the appraisers set off to them by metes and bounds a homestead, under the third section of the act to exempt the homestead of families from forced sale on execution to pay debts. 2 S. & C. 1145. The residue of the real estate belonging to the deceased at the time of his death, was sold under the order, and the proceeds arising from the sale were applied to the payment of the debts of the estate. The total assets thus realized were insufficient to pay all the debts of the estate, the general creditors receiving less than twenty-five per centum of their claims presented to, and allowed by the administrator. The distribution was made in April, 1854, by order of the court, upon a settlement then had by the administrator with the probate court of the account between him and the estate. On the 16th day of March, 1876, a supplemental petition was filed by the administrator in the probate court, wherein he stated the foregoing facts, and the further fact that all the children of William Tay-

lor who were minors at the time the homestead was assigned, had arrived at full age, and that therefore the homestead right had ceased and determined. He prayed for an order for the sale of the lands so occupied as a homestead. To this supplemental petition the widow and heirs were made parties defendant, and in their answer to the petition alleged :

1. That said Elihu Thorn had not acted as administrator of said estate for the twenty years last past.   2. That all the debts and claims, to pay which the plaintiff sought an order to sell the property, had long since been barred by the statute of limitations.   3. That said Matilda Taylor still occupied the premises as a homestead, and had a right to so occupy them.   4. That Mrs. Taylor, since the homestead was assigned, had occupied the premises adversely for more than twenty-one years.   5. That said administrator had become insolvent.

To this answer the plaintiff below replied, that he had acted as such administrator during the past twenty years, whenever it was necessary and proper that he should so act.   That he had never resigned nor been removed. He denied his insolvency, but expressed his willingness to give an additional bond.   He denied that said debts were barred by the statute of limitations.   He admitted that Mrs. Taylor had been in the continuous occupancy of the premises for more than twenty-one years, but denied its adverse character.   A demurrer to this reply was overruled, and, on hearing, an order for the sale of the property was granted, the administrator being required to give an additional bond.  · A bill of exceptions was allowed and sealed, setting forth all the evidence, including the facts above stated. The plaintiff in error carried the case to the court of common pleas on error, where the order of the probate court was affirmed, and thence to the district court, where the judgment of the court of common pleas was affirmed. The plaintiffs now ask leave to file a petition in error to reverse the several judgments of the courts below.

*Partington & Cunningham*, for the motion.
*J. J. Winans*, contra.

BOYNTON, J.   It is suggested in argument that Mrs. Taylor has acquired title to the premises set apart as a homestead for her and her minor children, by reason of having occupied them, exclusively and continuously, for more than twenty-one years.   But such possession could not have been adverse, so long as she had the legal right to occupy the premises as a homestead.   *Holt* v. *Lamb*, 17 Ohio St. 374; *Carpenter* v. *Denoon*, ante, 379.

It is not claimed that the length of time required to bar the right of the owner to recover the possession has elapsed, since the minor children became of age, or the homestead right terminated.

Three other grounds are stated in argument, upon each of which it is contended that the action of the probate court was erroneous.

First. That the claims or debts, for the payment of which an order for the sale of the premises was sought, were barred by the statute of limitations.

Second. That Mrs. Taylor is still entitled to a homestead in the premises, under the provisions of the fourth section of the homestead act, as amended May 1, 1871.   68 Ohio L. 106.

And, thirdly. That the powers and duties of the administrator ceased and were ended upon the settlement and distribution made in 1854.

1. It appears, from the undisputed facts, that in 1853 the claims, now alleged to be barred by the statute, were presented, properly vouched, to the administrator for allowance, and being satisfied that they were just, he accepted and allowed them as valid claims against the estate.   He exhausted in their part payment, and in the payment of the preferred claims, all the estate, both personal and real, of the intestate, except that upon which the homestead of the widow and minor children rested.   Thus matters remained until the right to occupy the homestead terminated, when,

or soon after which, an application was made to the probate court for an order to sell the premises, to complete the payment of the debts, thus but partially made. This application was made in March, 1876. The statute of limitations, insisted on by the plaintiffs, limits the right to maintain an action on an agreement in writing to fifteen years, and if not in writing, to six years, from the time the cause of action accrues. If this statute applies to the case, and the plaintiffs have the right to plead it, it would seem to defeat the right of the administrator to the order of sale prayed for. But in our judgment the statute has no application to the case. The right to maintain an action on claims against an estate presented to and allowed by the administrator is prohibited by the statute. The creditor is authorized to sue where his claim, on being presented for allowance, is rejected or disallowed by the administrator, but where its validity is acknowledged, and its allowance by the administrator as a just claim against the estate is secured, no action will lie upon it.

There is nothing, in such case, for the statute to operate upon. It is expressly provided by the statute prescribing limitations to civil actions, that if a debtor, after the cause of action accrues, depart from the state, or abscond, or conceal himself, the time of his absence or concealment shall not be computed as any part of the time within which the action must be brought. Here the statute ceases to run because of the difficulty in reaching the debtor. Why should not the same rule apply to his presence within the state where all right to maintain an action against him is prohibited? Statutes of limitation affect the remedy only. They do not extinguish the debt nor affect its validity. They merely withhold from the owner thereof the right to employ remedial process for its collection; and where there is no right to such process for the statute to operate upon, where the right to resort to the courts for the collection of the debt is taken away, the statute ought not, and was not intended to apply. *Trustees of Greene Township* v. *Campbell*, 16 Ohio St. 16.

In Angell on Limitations (chap. 7, sec. 45) it is said: "The term 'cause of action' implies not only a right of action, but also that there is some person in existence who is qualified to institute process. Where there is no person to sue, no laches can be imputed, and applying in such case the statute of limitations would be extreme injustice." The principle thus stated applies with equal relevancy and force to a case where the right to maintain the action is cut off by the statute. In *Montgomery* v. *Hernandez*, 12 Wheat. 129, it is held, that "where a right of action is suspended, the statute does not run during the suspension;" and in *Leasure* v. *Mahoning Township*, 8 Watts, 551, the rule is stated by Kennedy, J., to be as follows: "The statute of limitations does not, and it was never intended that it should, apply to claims for the recovery of which the party entitled thereto could not maintain an action."

The following authorities bear with more or less directness upon the same question: *Murray* v. *The East India Company*, 5 Barn. & Ald. 204; *Richards* v. *Maryland Ins. Co.*, 8 Cranch, 84; *Andrews* v. *The Hartford and New Haven R. R. Co.*, 34 Conn. 57; *Carey* v. *Morris*, 5 Har. 299; *McNair* v. *Dodge*, 7 Mo. 404; *Sanford* v. *Sanford*, 62 N. Y. 555. We therefore hold, that as between the estate of a deceased debtor and its creditors, the statute of limitations ceases to run against the claims of the latter, upon their presentment to and allowance by the executor or administrator.

2. It is claimed on behalf of Mrs. Taylor, the widow, that she is still entitled to a homestead in the premises, by virtue of the fourth section of the homestead act, as amended May 1, 1871, although her children have all arrived at full age.

That section is as follows: "Every widower, having an unmarried minor child or children residing with him as part of his family, and every widow, shall have the benefit of this act, in the same manner as married persons; and married persons living together as husband and wife, shall be entitled to the exemptions in this act provided, although

they shall have no children ; and provided further, that in
no case shall the husband and wife each be entitled to hold
the exemptions specified in this act severally at the same
time." It is entirely a misconception of the scope and
effect of this section to suppose that it confers upon the
widow a right to a homestead in the lands of her deceased
husband. Such was not its object, nor is such its mean-
ing or effect.

· The third section of the original act (2 S. & C. 1145) is
still in force, and makes provision for a homestead for the
widow and minor children in the lands of a deceased debtor.
That section, among other thing, provides, that, " on peti-
tion of executors or administrators to sell any lands of any
decedent to pay debts, who shall have left a widow and a.
minor child, or children, unmarried, and composing a part
of the decedent's family at the time of his death, the ap-
praisers shall proceed to set apart a homestead."

This is the only provision of the statute that authorizes
a homestead to be set off in the lands belonging to a dece-
dent's estate, and to create the right here given, there must
be a widow and a minor child, unmarried, and composing
a part of the decedent's family at the time of his death.
The fourth section, as it originally stood, had no appli-
cation, nor has it any as amended, to cases involving or
growing out of the settlement of estates of deceased per-
sons by executors or administrators. This will clearly
appear from a careful reading of the various provisions of
the statute, after the fourth section, as amended, is substi-
tuted in the original act for the section amended or re-
pealed. That section must be construed, and its meaning
determined, in connection with the third, and all other
sections of the act, and as if all were passed at the same time.
*McKibben* v. *Lester*, 9 Ohio St. 627. When so interpreted,
its meaning and object are easily ascertained. The con-
struction contended for by counsel for Mrs. Taylor, would
involve the legislature in the absurdity of intending by the
third section to create the right to a homestead in a dece-
dent's lands only when there were a widow and a minor
child, and by the fourth section to create the right where

there were no children, and confer it upon the widow alone. This construction, so clearly not intended, can not be adopted. The manifest and apparent purpose of the fourth section of the act as amended, so far as it relates to the rights of widowers or widows, is to confer upon a widower having an unmarried minor child residing with him as a part of his family, the right to avail himself of the exemptions provided by the statute to the head of a family. In other words, he is to be treated as the head of a family, although he has no wife. So also the widow *without* a minor child composing a part of her family, is entitled to the benefit of all the provisions of the act; that is, she is awarded the right to the exemption of her property, both real and personal, from forced sale to pay debts, as fully as if she were the head of a family. A similar privilege was extended to her by the act of 1873, to exempt specific articles of personal property from execution (70 Ohio L. 132). She is by this act entitled to the same exemptions as the head of a family. But all such exemptions relate to her own property, and not to that belonging to the estate of her deceased husband.

3. The settlement in 1854, with the probate court, by the administrator, of his accounts with the estate, and the distribution at that time of the assets in his hands, did not end his powers, nor terminate his duties. The estate was not fully settled. As soon as the right to occupy the premises set apart for a homestead ceased to exist, there would be other assets to be administered. When such assets would become available was, to some extent, uncertain; for, while the homestead right would certainly end at the becoming of age of all the minor children, it might terminate before by their death; and upon its termination the creditors would be entitled to the further assets to be derived from the sale of the premises which had been so occupied. The administrator had not resigned, nor had he been removed. Neither his functions nor duties would cease until the estate was fully settled. *McAffee* v. *Phillips,* 25 Ohio St. 374.

*Leave refused.*