J. M. WEAVER ET AL. *v.* S. A. WILLIAMS ET AL.

1. ESTATES OF DECEDENTS.  *Executors de son tort.  Conversion of assets.*

    After having jointly converted promissory notes which had never been returned as assets, executors *de son tort* cannot claim that the notes were assets and only collectible by an administrator to be appointed.

2. SAME.  *Charges paid.  Set-off.*

    Charges paid by executors *de son tort* cannot be availed of as a set-off against the claim of an estate when unsupported by evidence showing that they were legal demands against the estate.

3. SAME.  *Accrual of interest.  Rate.*

    Where interest for the year preceding maturity is included in a note wrongfully taken from a decedent's estate by the maker, interest from maturity only should be included in a decree for its conversion; and, in the absence of any specified rate, the rate charged should be six per cent. per annum.

4. SAME.  *Partition.  Distribution.  Per stirpes.*

    In a proceeding to partition the lands of a decedent and to recover against executors *de son tort*, the rights of the parties in interest should be established, as to both the real and personal property, *per stirpes*, and not *per capita*.

FROM the chancery court of Itawamba county.

HON. BAXTER McFARLAND, Chancellor.

This was a proceeding for the partition of the lands belonging to the estate of Martha King, and for a recovery *in personam* against the defendants, J. M. Weaver and W. P. Weaver (appellants here), for moneys and notes alleged to have been taken possession of by said J. M. and W. P. Weaver, of the estate of said Martha King, and used for their own benefit. There was an original bill and answer by the defendants, J. M. and W. P. Weaver, and then an amended bill. The allegation of

the original bill, in relation to the moneys and the notes of the decedent, is substantially that the said J. M. and W. P. Weaver took possession of said money and the said notes, and now have them, and they are asked to bring them into court for division; and at the close of the bill there is a prayer for general relief. In the answer of J. M. and W. P. Weaver, they admit getting $105 of the money of the estate of Mrs. King, and the notes of Madox for $69.80, and that of Henderson for $45, credited with $20. But they claim to have taken possession thereof at the request of Mrs. Waldrop, one of the heirs, and in their answer they ask that the amounts charged against them in the bill be set aside, and to substitute therefor the note of T. J. Madox for $69.80, and of E. F. Umphries for $10, and of Doc Henderson for $25, and cash to the amount of $105, and pray that the note of J. M. Weaver be excluded. In the answer they admit that J. M. Weaver tore his name off the note he had signed, but he was willing to restore it, and that he took the money to loan out for Mrs. King, and was to pay her interest at ten per centum.

In an amendment to the answer it is alleged that there are other heirs than those named in the bill, and among others is named Frank P. Allen, whose interest in the controversy had not appeared prior to date of amended answer, March 21, 1896. He was the son of a deceased sister of the intestate, Mrs. King, the descendants of whose two brothers are named in the bill as if they were the sole heirs and distributees though not so expressly declared to be. The amended bill is very much like the original; adding some other parties as heirs of Mrs. King, and saying nothing about what interest each of the complainants and defendants has in the property, but simply saying they are tenants in common. The prayer is for a division of the property, and that the defendants, J. M. and W. P. Weaver, account for the moneys and notes, as they took possession of them improperly and without authority, and for general relief. The final decree in the court below was rendered in favor of com-

plainants, and thereby the defendants, J. M. and W. P. Weaver, were made liable for the note of J. M. Weaver, mentioned in the pleadings, and also were made liable for $69.80, with interest, and $25 and interest for notes of the estate of Martha King converted by them to their own use without lawful authority. From this decree the executors *de son tort* and Frank P. Allen appealed. The nature of the evidence is sufficiently indicated by the opinion.

*Clifton & Eckford,* for the appellants.

The first three assignments of error are predicated of the fact that much of the personal property which the decree charges appellants J. M. and W. P. Weaver with still belongs to the estate unadministered. Now, it is clear that these notes and accounts could not be collected without an administration, and that no decree touching them should have been made, until an administrator of the estate had been a party to the proceeding. 7 Am. & Eng. Enc. L., 402; Daniel's Ch. Pl. & Pr., 319, and cases cited. Nor is this error cured by the fact that an executor *de son tort* was already before the court. *Penny* v. *Watts,* 2 Phill. Ecc. (Eng.), 149; *Creasor* v. *Robinson,* 14 Beav. (Eng.), 589.

J. M. and W. P. Weaver are only liable to the heirs personally for so much of these notes as they have converted to their own use, as executors *de son tort.* If what they did with these notes did not impair the rights of the estate to collect them, or, if either the notes or money were applied to the payment of the debts of the estate, then clearly this was a complete defense. *Gay* v. *Lemle,* 32 Miss., 310; *Hardy* v. *Thomas,* 23 Miss., 544; *Hill* v. *Henderson,* 13 Smed. & M., 688; *Peeler* v. *Peeler,* 11 So., 318. Under such circumstances the liability of an executor *de son tort,* to either creditor or heirs, is precisely the same as that of a rightful and regular executor. Code 1892, § 1926; *Hill* v. *Henderson,* 13 Smed. & M., 688.

It must be remembered that the proceeding is for the recov-

ery of the personal property for the purpose of division and distribution. Of course, in the event the property cannot be recovered, then these executors would be liable for the value of so much of it as they have appropriated to their own use or wasted. If the contention be that the estate owed no debts, except for the coffin, which was allowed the executors, then the delivery to T. J. Madox of his note, and the mutilation by J. M. Weaver of his note, in nowise affects the liability of the debtors, or the right of the estate to collect them when an administrator is appointed.

In the case of Madox, the delivery of the note was without consideration, and, upon proof of its loss or destruction, could be collected. In the J. M. Weaver case, a new note was executed in lieu of the one destroyed, and turned into court. The only note converted by either to his own use was the $19, paid by Doc. Henderson for W. P. Weaver.

These notes, then, being assets of the estate capable of being administered, the decree should have provided for the amount to be levied of these assets, if the executors have so much, but, if not, then of the defendant's own goods. *Witcher* v. *Wilson,* 47 Miss., 663; *Hill* v. *Henderson,* 13 Smed. & M., 688; *Hill* v. *Robeson,* 2 Smed. & M., 541; *Barrow* v. *Wade,* 7 Smed. & M., 49; code 1892, § 1926.

The estate being solvent, the executors are entitled to a credit for such debts as they may have paid off out of these assets. *Gray* v. *Lemle,* 32 Miss., 309, and cases *supra.* Under this principle, the evidence shows that the fourth assignment of error was well taken. It clearly appears from the evidence that T. J. Madox was asserting a claim against the estate greater than the note he owed; and that it was in compromise or settlement of this claim that W. P. Weaver delivered up his note; that Mrs. John Weaver had taken care of and nursed the testator at her own house during her last illness, and that before her death Mrs. King had requested she be paid $25 for these services; that W. P. Weaver had a medical bill against the tes-

tator for services in her last illness, and divers other times, in amount greater than all the money he had received.

But this decree is a joint decree against both of these executors, when J. M. Weaver had nothing at all to do with the payment of these debts by W. P. Weaver, and W. P. Weaver had nothing to do with J. M. Weaver's liability on his individual note to the estate. Clearly, the fifth assignment of error is well taken. 11 Am. & Eng. Enc. L., 1022; *Gaultney* v. *Nolan*, 33 Miss., 569.

They are not only held liable jointly and personally, but for interest on the money for one year previous to the death of Mrs. King, during which time the old lady had carried this money around her waist, and for one year's interest too much on the T. J. Madox note, and for ten per cent. on the Henderson note, when it only drew six per cent.

The eighth assignment of error is raised by Frank P. Allen as well as the executors. Frank P. Allen has a one-fourth interest in the entire estate, and yet he is excluded entirely, although shown to be a party and heir in interest. Mrs. Robinson is entitled to a one-sixteenth interest in all the property, and made a complainant to the amended bill, and yet she is cut off entirely by the decree. The I. P. Weaver children are entitled to a one-third interest, and yet the decree fixes it at a one-twentieth interest. The Jno. Weaver children are entitled each to a one-thirty-second interest, and yet the decree fixes their interest at a one-twentieth. The Umphries children are each entitled to a one-sixteenth, and yet this decree fixes their interest at a one-twentieth.

This decree is a final decree, fixing the right of all parties in this estate, and is also an entire decree. It cannot be upheld as to the personal part of it against these executors, and set aside as to the land. *Gilleylan* v. *Martin*, 73 Miss., 695; *Rule* v. *Broach*, 58 Miss., 552. It erroneously fixes the interest of the parties in the personal decree to be the same as in the land, and, being erroneous as to one, is erroneous as to both.

*W. L. Clayton,* for appellees.

The familiar principle of law that where two or more do a wrong, either is liable for the whole damage, applies to these parties.  If they had taken possession of these notes and the money, simply as heirs, and kept the same to be divided between all the heirs, it would have been all right; but the very inception of the thing was in wrong.  The possession was taken at the start with the view of appropriating to their own use.  This they did as far as they were able to do actually, and then we are told in the brief of counsel that because J. M. Weaver appropriated his own note to his own use, and that W. P. Weaver having applied the Doc. Henderson note to his own use, that J. M. Weaver is not responsible for that; and that although the note of T. J. Madox was surrendered to him, and counted as paid between them, and destroyed, that there has been no wrong of which we can complain.  We are now to have an administrator appointed on the estate of Martha King, and go around and gather up the fragments of these notes, and sue on them, and let the wrongdoers alone in the possession of what they have obtained.

There is no merit in the contention that the money should be levied of the assets of the said estate of Mrs. King in their hands to be administered, and not a personal decree against them.  But while this is the general decree in relation to administrators *de son tort,* such rule does not apply when it is shown that they are liable by reason of having applied the estate to their own use or destroyed it, or otherwise become liable by such action as is shown in this case.  To say that a decree should be reversed when it is shown that the party sued as executor *de son tort* paid his own debt with the money of the decedent, because the decree is for the payment of the money absolutely, would be a denial of justice.  Of course he would not then have the effects of the decedent in his hand when he had paid it out.  The case of *Hill* v. *Henderson* referred to by counsel does not apply at all, for the reason, in that case the

judgment was for the defendant for a certain sum to be levied of the goods and chattels of the decedent in his hands to be administered at the time of the death of the decedent remaining to be administered, and if not, then of his own goods and chattels. *Hill* v. *Henderson*, 13 Smed. & M., 689, 690.

So, it can be readily seen that the judgment in that case made him liable for more than came into his hands, or might make him so liable. I recognize the rule that we can only make one who intermeddled in the estate of a decedent liable for the amount he uses of the estate, or the damage he causes by such intermeddling. But where the decree, as in this case, shows on its face that the sum for which the decree is entered, is the very sum the defendant has used, or made himself liable for, by his acts, then the decree is correct which is in the ordinary form. In the case of *Peeler* v. *Peeler*, 11 So. Rep., 318, the question being here discussed is not mentioned.

The third assignment of error calls in question the decree because it is for money, notes and property which the defendants delivered into court as they were asked to do in the bill. Unfortunately for the defendants, the decree was not rendered on account of any note which they delivered into court, and no note for which the decree was rendered, was filed in the court, as the J. M. Weaver note was only there without the name, it having been torn off to show payment.

The fourth assignment of error calls in question the correctness of the decree because the defendants were not allowed a credit for debts of the decedent paid by them. In the first place no defense of that kind was made by them in their answer. No notice was ever given to the complainants that any such defense would be made, and no evidence was taken on that point at all. In the second place, when an executor *de son tort* sets up *plene administravit*, he must show the validity of the debts which he has paid out of the assets.

The brief of opposing counsel calls in question the interest for one year of the money found, and one year too much on the

Madox note, and ten per cent. on the Henderson note, when it only drew six per cent. In relation to the money, it is true that there was a mistake, as I now see the calculation was made from May 1, 1893, when it should have been for one year less. But we shall contend that, in the whole, there was not any too much interest calculated. But, if there should be, then we will enter a remitter of that amount. As to the Madox note, he says that he gave the note to Mrs. King about one year before she died, and that it was for $69.80, and drawing interest from date at ten per cent., and then says one year's interest was added in the face of the note, and it bore interest from maturity at ten per centum, and that he tore it up in one second after Weaver gave it to him. But it will be seen that this failure to calculate interest for the proper time on the Henderson note more than covers the over calculation in the money on hand at the time of the death. It is also contended that the administrator of Mrs. King's estate should have been a party to this proceeding. But there is no evidence of there being any administrator of her estate. It is a constant practice in this state to file bills for the partition of the estates of decedents, both real and personal, without there being any administrator appointed at all.

In relation to the objection that the distribution is made *per capita* instead of *per stirpes*, I will say that every intendment shall be in favor of the decree in this respect, and it devolves upon the appellants to show that this is error. It is true that the original bill speaks of certain ones being entitled to one-ninth of one-half and others one-eighth of one-half of the estate. But other parties are made complainants by the amended bill, and in this it is simply said they are tenants in common—the complainants and the defendants—without saying the interest each is entitled to. The answer speaks of the heirs as being tenants in common. We can very readily conclude that, when the other heirs were made parties, the statement of one-ninth of one-half and one-eighth of one-half was so changed as to

make them equal heirs, and there is nothing to show that this is not the correct solution of the matter. All the presumption is in favor of the correctness of the decree. If it had been otherwise, it was a matter that the attention could have been called to very readily, and the correction made in the court below. Another point made in this assignment is that the complainant, Mrs. Mary Robinson, was not provided for in the decree, nor was Frank P. Allen, when the record shows that they were heirs and parties. As to Mrs. Robinson, we represent her, and she is certainly provided for in the decree. It is true that her name is not mentioned in the decree, but, for fear some of the parties should be left out, they being numerous, the decree, after reciting that the parties named should have their personal decree against the defendants, goes on to provide as follows: "And that each of the complainants and each of the defendants are hereby declared to be equal in the distribution of the proceeds of the sale of the lands and the proceeds of the collection of the said personal decree."

WHITFIELD, J., delivered the opinion of the court.

The first assignment of error is too broad. The court did not render a personal decree against J. M. and W. P. Weaver for the amount of any notes except those of J. M. Weaver, T. J. Madox and O. B. Henderson, and as to these the decree was manifestly correct, on the proof in the record. What was done as to these notes was clearly a joint conversion of them. Henderson's note and Madox's note were both surrendered, and never returned into court, nineteen dollars of Doc Henderson's note having been paid for W. P. Weaver's benefit. J. M. Weaver's note was returned into court with the name torn off. It is unnecessary to set out in detail the testimony. It is perfectly clear that the two Weavers acted jointly in the conversion of these notes and the money. The contention that these three notes are assets, to be collected only by an administrator to be appointed, is not maintainable on the facts here. As

shown, these notes were not returned as assets. It is not for these parties to deal, as shown by this record, with these notes, and then call them assets. They distinctly converted them, and have never returned them, and are liable for their value. The authorities cited are not applicable here. The chancellor ruled rightly as to this.

The contention that these executors *de son tort* have paid debts which should have been credited on the personal decree is also untenable, for the obvious reason that the proof utterly fails to show that the debts which they claim to have paid were valid charges against the estate—charges such as a rightful executor would have been protected in paying.

We have said, in *Gay* v. *Lemle*, 32 Miss., 312, "There is no authority, and there can be no reason, for holding that he [an executor *de son tort*] is justified in applying the assets to the payment of debts which the rightful executor would not have been authorized to pay." The loose, vague, uncertain testimony here on this point is utterly unsatisfactory. The observations of the court in *Hardy* v. *Thomas*, 23 Miss., 546, 547, are to be specially noted, the court declaring: "If a party see fit, without authority of law, to intermeddle with an estate, to pay debts, and sell property for that purpose, all he can rightfully ask is the privilege of proving a claim against the estate for the sums so paid, and demanding payment from the administrator, ratably with the other creditors." We do not, of course, mean to be understood as saying that if the claims' were legal charges against the estate, and have been paid by the executors *de son tort*, they could not here diminish the recovery by their amount. We call attention merely to the case in 23 Miss., *supra*, in view of the dealing with these notes, resting our approval of the chancellor's action in this respect upon the total failure of the testimony to show that any claims alleged to have been paid were such as were legal charges against the estate.

It was error to award interest against appellants on the money taken from the body of decedent, from May 1, 1893. She died

in May, 1894.   And so it was also error to allow the interest on the Madox note from May 1, 1893—its date.   Interest for the first year was in its face.   Interest should have been awarded from its maturity.   And, as no rate of interest is shown as to the Henderson note, six per cent. should have been taken as the rate.

It is also clear that the rights of the parties should have been fixed, in both personalty and realty, *per stirpes*, and not *per capita*, and that the interest of Frank P. Allen should have been taken into account.   These mistakes the chancellor was very naturally led into by the pleadings.   Nowhere is any sister mentioned, and yet there were two sisters, it seems.   This appears to be so, though very vaguely.   The bills both proceed on the theory that the complainants and defendants were each entitled to the same share, and the final decree, following the pleadings, so states.   The amendment by which Frank P. Allen was brought in was made March 21, 1896, appearing by way of amendment to the answer or so-called cross bill, while the amended bill was filed January 13, 1896, before this date; said Allen's interest not having been heard of till March 21, 1896. No notice seems to have been taken of this thereafter.   The chancellor, therefore, was most naturally misled by the highly irregular method pursued in the pleadings and proof.   But as the fact seems to be that Frank P. Allen is entitled to one-fourth of the entire estate, the decree is erroneous in ascertaining and fixing the rights of the parties in both personalty and realty.   Some criticism of the form of the decree is made.   The proper form of decree is given in *Witcher* v. *Wilson*, 47 Miss., 663.

*For the errors indicated, the decree is reversed and the cause remanded, to be proceeded with in accordance with this opinion.*