SADIE CORBETT HAYES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8605. Promulgated April 30, 1946.

*Earl Bohannon, Esq.,* for the petitioner.
*Harlow B. King, Esq.,* for the respondent.

OPINION.

LEECH, *Judge*: Respondent has determined a deficiency in income tax for the calendar year 1943 in the amount of $189.23. The question

is whether a return filed for the year 1942 by petitioner for herself and her deceased husband constituted a valid joint return under which the petitioner was liable for the deficiency. The liability of petitioner on such return affects her tax for the year 1943. The proceeding was submitted upon a stipulation of facts, which we adopt by reference.

Petitioner is a resident of Parsons, Kansas, and is the widow of Alfred Leslie Hayes, who died intestate on February 12, 1943. Her return for the calendar year 1943 was filed with the collector of internal revenue for the district of Kansas.

On March 8, 1943, the petitioner filed an income tax return for the year 1942 with the collector of internal revenue at Wichita, Kansas. The caption of this read, so far as pertinent, as follows:

PAGE 1
1942

FORM 1040
\* \* \*

UNITED STATES

INDIVIDUAL INCOME TAX RETURN

\* \* \* \* \*

FOR THE CALENDAR YEAR 1942

\* \* \* \* \*

PRINT NAME AND ADDRESS PLAINLY. \* \* \*

Alfred Leslie and Sadie Corbett Hayes

(Name) (Use given name of both husband and wife, if this is a joint return)

\* \* \* \* \*

The return included the income and deductions of both petitioner and her husband, with whom she was living as such throughout the calendar year 1942. It was verified by petitioner who signed the return as follows: "Alfred Leslie Hayes (deceased) by Mrs. Sadie Corbett Hayes (Wife) [and] Mrs. Sadie Corbett Hayes." A payment of $81.72 accompanied the return, which was one-fourth of the tax shown therein. No further payments have been made.

Petitioner's income in 1942 was $957.14, of which $947.46 was received as compensation for personal services and $9.68 from rents. Real estate taxes in the amount of $80.78 were paid by petitioner in 1942. The income of petitioner's husband in 1942 was $3,651.16, which he received as compensation for personal services. His allowable deductions for contributions, interest, taxes, losses, and union dues were $517.87.

Under date of August 11, 1943, the petitioner tendered another alleged income tax return in which she included and reported only her separate income for the year 1942. A tax of $47.25 was computed on this return, but no payment was made. On the other hand, an overpayment was claimed in the amount of $21.48, computed as follows:

| | |
|---|---:|
| Tax | $47.25 |
| 25% penalty | 11.81 |
| Interest at 2½% | 1.18 |
| | 60.24 |
| Paid Mar. 6, 1943 | 81.72 |
| Overpayment | 21.48 |

A formal claim for refund, in the amount of $21.48 accompanied this return.

On or about October 23, 1943, petitioner received a letter from the collector's office refusing to accept the belated alleged individual return and advising that the aforesaid joint return filed by her for herself and her deceased husband was considered a valid return and accepted as such.

On February 16, 1944, the petitioner filed an income tax return for the year 1943, and in computing her tax liability thereunder she used the sum of $47.25, this being the amount of tax computed upon her individual return filed for the prior year, in determining her income and victory tax liability for 1943. As a result of such computation, petitioner reported an overpayment of $71.88.

Although the estate of petitioner's husband has not been probated, petitioner received the following property by reason of his death:

| | | |
|---|---:|---:|
| (a) Group life insurance on the life of her husband, paid to her as beneficiary by the Travelers Insurance Co | | $2,000.00 |
| (b) Life insurance on the life of her husband, paid to her as beneficiary by Metropolitan Life Insurance Co | | 1,800.94 |
| (c) From redemption of 6 United States bonds, demonination $25 each, issue price $18.75 each, issued in the names of Alfred Leslie Hayes and Sadie Agatha Hayes as coowner—redeemed by petitioner after the death of her husband | | 113.61 |
| (d) Refund of deductions from her deceased husband's wages, received from J-M Service Corporation, said deductions being earmarked for the purchase of United States bonds in the names of Alfred Leslie Hayes and Sadie Agatha Hayes as coowner—check was made payable to Alfred L. Hayes and endorsed by petitioner in accordance with arrangement made by bank with employer | | 12.50 |

The following assets of petitioner's husband were taken over or received by petitioner and applied in payment of funeral expenses:

| | | |
|---|---:|---:|
| (e) Deceased husband's wages from J-M Service Corporation—check was made payable to Alfred L. Hayes and endorsed by petitioner in accordance with arrangement made by bank with employer | | 105.58 |
| (f) Burial fund payment from the Steamfitters Union | $150.00 | |
| Less: Back dues paid by petitioner | 42.00 | |
| | | 108.00 |
| (g) 1930 Hudson automobile—jacked up in petitioner's garage—sold for | | 35.00 |

Petitioner paid the following expenses resulting from the death of her husband:

| | |
|---|---|
| (a) Funeral expenses—Carson Funeral Home—paid March 6, 1943___ | $436. 20 |
| (b) Mt. Olivet Cemetery (burial lot)—paid March 15, 1943_____ | 100. 00 |
| Total_____ | 536. 20 |

No Federal income tax return was filed reporting the income of Afred Leslie Hayes for the year 1942 except the joint return for that year executed and filed by petitioner. Petitioner did not discuss with her husband whether to file a single joint return or separate returns for the year 1942.

On November 21, 1941, petitioner's husband executed a warranty deed conveying to petitioner a fee simple title to certain real estate. Petitioner believed at the time she filed the alleged joint return that her deceased husband owned a one-half interest in this real estate, but later discovered that he had no interest therein.

Sections 11 and 12 of the Internal Revenue Code, as to normal and and surtax, were subject for the year 1943 to the provisions of section 6 of the Current Tax Payment Act of 1943, as amended by section 506 (a), (b), and (c) of the Revenue Act of 1943, which included the so-called *forgiveness feature* with respect to 1942 taxes. Because of this feature a comparison of the respective tax liabilities for 1942 and 1943 was required. Accordingly, the use of the 1942 tax liability was necessary in computing the taxes for 1943. Petitioner insists that her liability as shown on her purported delinquent separate return for 1942 be used for that purpose. Respondent, on the other hand, determined the contested deficiency, and he here argues that her liability as disclosed by the prior return is controlling.

Petitioner's husband was living with her as such at the close of the calendar year 1942. He died prior to March 15, 1943, the date upon which Federal income tax returns of both were required to be filed for 1942.[1] Subsequent to the death of her husband, and on March 8, 1943, petitioner filed a single return for herself and her deceased husband, including therein the income and deductions of both. It was captioned as the joint return of "Alfred Leslie and Sadie Corbett Hayes" and was signed "Alfred Leslie Hayes (deceased) by Mrs. Sadie Corbett Hayes (Wife) [and] Mrs. Sadie Corbett Hayes." Subsequently the petitioner discovered that the estate of her deceased husband was insolvent and that if a separate return had been filed by her the Government would have been unable to collect the income tax due from her deceased husband upon the income received by him during 1942. Then, on August 11, 1943, she filed a purported delinquent separate return and claimed an overpayment of tax as resulting

---

[1] Sec. 53 (a), I. R. C.

from the payment of the first installment on the return theretofore filed. If the first return was a valid joint return of petitioner and her husband for 1942, it undoubtedly constituted a valid, binding, and irrevocable election to file on that basis and have their income tax for that year so computed. *Lucas* v. *St. Louis National Baseball Club*, 42 Fed. (2d) 984; *Buttolph* v. *Commissioner*, 29 Fed. (2d) 695; *Grant* v. *Rose*, 24 Fed. (2d) 115; *Alameda Investment Co.* v. *McLaughlin*, 28 Fed. (2d) 81; *Radiant Glass Co.* v. *Burnet*, 54 Fed. (2d) 718. Thus the question is whether the first return constituted a valid joint return for 1942 for petitioner and her husband.

Section 51 (b) of the Internal Revenue Code is controlling and provides:

SEC. 51. INDIVIDUAL RETURNS

\* · \* \* \* \* . \* \*

(b) HUSBAND AND WIFE.—In the case of a husband and wife living together the income of each (even though one has no gross income) may be included in a single return made by them jointly, in which case the tax shall be computed on the aggregate income, and the liability with respect to the tax shall be joint and several. \* \* \*

The condition, under the quoted statutory provision, giving rise to the right to file a joint return for the year 1942 is that a husband and wife be "living together" at the close of that year.[2] Such a condition existed here. Petitioner apparently concedes that the earlier return she filed was intended to be and, on its face, constituted a joint return See *Anderson* v. *United States*, 48 Fed. (2d) 201; *Mrs. D. Sydney Smith*, 4 B. T. A. 385; *Mrs. Fred W. Gooding*, 4 B. T. A. 388; *Estelle B. Sargent*, 22 B. T. A. 1270. She does not claim that by reason of the death of her husband after December 31, 1942, the right to file a joint return was lost. Her position is simply that, although he was living at the close of the calender year 1942, because his death occurred prior to the date upon which she filed the joint return she was without authority to do so, since the income of her deceased husband could only be reported by the duly qualified representative of his estate. She argues that the election to file a joint return must be made by both parties thereto and that, petitioner's husband being dead, such an election was thereafter impossible. Upon this premise she contends that the first return was not a valid joint return, since it was filed without legal authority, from which it would follow that the only legal return of petitioner was the belated purported separate return which the collector refused to accept.

We think this position is without merit. The evidence is that the estate of the deceased husband was never administered by a court, nor

[2] *Gertrude H. Thompson*, 30 B. T. A. 30; Regulation 111, sec. 29.51–1 (b); Regulation 103, sec. 19.51–1 (b); Regulation 101, art. 51–1 (b); Regulation 86, art. 51–1; Regulation 77, art. 381; Regulation 74, art. 381; Regulation 69, art. 401.

was a personal representative for him ever duly appointed. The petitioner, however, actually received the assets and administered the estate of the decedent. By so doing she assumed authority to act for the estate in filing the earlier return for decedent. Although we find no Kansas cases on the point, the general rule is that one who, without legal appointment, assumes and exercises authority to act for an estate, as petitioner did here, thereby becomes executor *de son tort* and is estopped to deny the authority to so act. *Damoth* v. *Krock*, 29 Mich. 289; *Grace* v. *Seibert*, 235 Ill. 190; 85 N. E. 308; *Broholm* v. *Anderson*, 178 Ill. A. 623; *Weaver* v. *Williams*, 75 Miss. 945; 23 So. 649. We follow that general rule. So far as petitioner is concerned, the first return was a valid, binding, and irrevocable election to file a joint return for her and her deceased husband for the calendar year 1942. See *Estate of Carrie M. Botts*, 42 B. T. A. 977; reversed on another point *sub nom. Tooley* v. *Commissioner*, 121 Fed. (2d) 350. Accordingly,

*Decision will be entered for the respondent.*

Reviewed by the Court.