MAXINE RUZICH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5763–64. Filed January 11, 1967.

*Arnold O. Zacks,* for the petitioner.
*Richard M. Schwartz,* for the respondent.

DRENNEN, *Judge:* Respondent issued a notice of deficiency to Estate of Virgil Lowell Gullett, deceased, Maxine L. Gullett, administratrix, and Mrs. Maxine L. Gullett, in which he determined there was a deficiency in income tax for the year 1962 in the amount of $2,115.96. Separate petitions for redetermination were filed in this Court by the Estate of Virgil Lowell Gullett, Maxine L. Gullett, administratrix

(docket No. 5764–64), and by Maxine L. Gullett [1] in her individual capacity (docket No. 5763–64). When these two cases were called from the calendar for trial there was no appearance for the Estate of Virgil Lowell Gullett and respondent's motion to dismiss that case for failure to prosecute was granted and decision was entered against the estate in the amount of $2,115.96. In her original and amended petitions filed in this case, docket No. 5763–64, petitioner claims she did not file a valid joint return for the year 1962 with Virgil Lowell Gullett and hence is not liable for the tax due on his income for 1962.

The only issue is whether petitioner executed a valid joint income tax return for the year 1962 with Virgil Lowell Gullett so as to be jointly and severally liable for the income tax shown to be due on the purported joint return and the deficiency in income tax as determined by respondent. Petitioner claims an overpayment of income tax for the year 1962 in the amount of $6,566.80.

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Petitioner is the surviving spouse of Virgil Lowell Gullett (hereinafter referred to as Gullett) who died May 12, 1962, a resident of Columbus, Ohio.

Prior to his death Gullett was actively engaged as a sole proprietor in Columbus, Ohio, in the business of representing claimants before the Industrial Commission of the State of Ohio.

On May 16, 1962, petitioner was appointed administratrix of the estate of Gullett by the Probate Court of Franklin County, Ohio. The estate was administered as an insolvent estate, and petitioner filed with the Probate Court a "First, Final and Distributive Account" on March 19, 1963. On the same date it was ordered by the Probate Court that petitioner's accounting be "approved and settled" and that petitioner and her sureties be discharged. The records of the clerk of the Probate Court noted that on March 19, 1963, petitioner's account was confirmed and her bondsmen were discharged.

In her "First, Final and Distributive Account" mentioned above, Maxine as administratrix of the Gullett estate, reported receipts totaling $14,010.59, principally from cash on hand and in bank accounts, accounts receivable, sale of office furniture and an automobile, proceeds of a life insurance policy, and proceeds from the settlement of a wrongful death claim. She reported disbursements in the same total amount which consisted principally of payments of funeral bills and attorneys' fees, a payment of $2,500 to herself as widow in lieu of

---

[1] Maxine Gullett remarried and an order was entered changing the caption of this docket number to Maxine Ruzich.

exempt property, a payment to herself as widow of $1,000 as the balance of the wrongful death claim settlement, and a distribution to herself of $6,817 as the "balance of estate on partial payment of years allowance."

On or about April 10, 1963, petitioner filed with the district director of internal revenue, Cincinnati, Ohio, a Federal income tax return, Form 1040, prepared by a public accountant, in the names of "Virgil (deceased 5/12) and Maxine Gullett." In the space provided on page 1 of the return, there was an "x" indicating that the return was for "Married filing joint return (even if only one had income)." A form, Schedule C, "Profit (or Loss) from Business or Profession," was attached to the return and was captioned "Virgil Gullett, (deceased)" and it was indicated thereon that the schedule was for the period "1–1 to 5/14/62." It reflected net income in the amount of $26,637.33. In the space for "Other Income or Losses" it was indicated on the return that there was distributed from the "Estate of Virgil Gullett (#1041 Filed)" the amount of $26,572.50. On page 1 of the return there was reported as income the amounts of $26,637.33, $26,572.50, and a loss (carryover) in the amount of $155.66. Itemized personal deductions were in the total amount of $6,987.61; two exemptions were shown as $1,200; and taxable income was reported in the amount of $44,866.56. Tax liability, including self-employment tax of Gullett in the amount of $225.60, was reported to be in the amount of $17,496.87. It was reported that payments on 1962 declaration of estimated tax totaled $8,000. Balance of income tax due was reported as $9,496.87. On or about April 15, 1963, petitioner paid tax in the amount of $9,496.87 by remitting to the district director of internal revenue, Cincinnati, Ohio, a check drawn on her individual bank account.

On page 2 of the Form 1040, in the spaces for signatures of taxpayers and preparers of the return, petitioner wrote the following: "Virgil Gullett By Maxine Gullett. Maxine Gullett."

On or about April 8, 1963, petitioner filed with the district director of internal revenue, Cincinnati, Ohio, a Federal fiduciary income tax return, Form 1041, prepared by the same public accountant, in the name of "Estate of Virgil Gullett, Maxine Gullett Administratrix" for the period "May 14, 1962, Dec 31, 1962." Income from "(Fees)" was reported to be in the amount of $56,285.75; deductions totaling $29,713.25 were itemized on an attached schedule; and net income in the amount of $26,572.50 was reported on page 1. There was reported as a "Deduction for distributions to beneficiaries" the amount of $26,572.50. There was no taxable income reported since the entire net income of the estate was shown as having been distributed to petitioner as beneficiary.

The Form 1041 was signed by petitioner, "Maxine Gullett, Administratrix."

Petitioner had filed joint Federal income tax returns with Gullett for taxable years before his death, and when she executed the return, Form 1040, on April 10, 1963, she believed that she was executing a joint Federal income tax return reporting Gullett's income for the period January 1 to May 12, 1962, and her income for the calendar year 1962.

Upon the death of Gullett, petitioner continued his business as a compensation consultant and secured authorizations from clients in order to represent them before the Industrial Commission of Ohio.

On or about September 15, 1962, petitioner filed a declaration of estimated tax, Form 1040–ES, with the district director of internal revenue, Cincinnati, Ohio, in the name "Maxine Gullett." Estimated income tax for the year 1962 was reported in the amount of $8,000. Petitioner signed the form "Maxine Gullett." One-half of the estimated tax was reported to be due on September 15, 1962, and petitioner, on or about September 17, 1962, remitted a check in the amount of $4,000 drawn on her individual bank account. She completed payment of her estimated tax for 1962 by remitting a second check on or about January 14, 1963, drawn on her individual bank account. Both of these checks, as well as the check drawn to pay the balance of tax shown to be due on the purported joint return mentioned above, had printed on the face "Maxine Gullett Compensation Consultant." These remittances were to the district director of internal revenue, Cincinnati, Ohio.

Petitioner retained an accountant to prepare the Form 1040 which she filed in the names of "Virgil (deceased 5/12) and Maxine Gullett," and the Form 1041 which she filed in the names of "Estate of Virgil Gullett, Maxine Gullett, Administratrix." At some time after these forms had been filed she was advised by counsel to file a separate individual tax return for herself for the taxable year 1962. She followed this advice and on or about July 2, 1963,[2] she filed with the district director of internal revenue, Cincinnati, Ohio, a Form 1040 for the calendar year 1962 in the name of "Maxine Gullett." Petitioner indicated in the appropriate space on the form that she was "Married filing separate return." In reply to the question, "If wife or husband also filing separately, give name," she answered, "Virgil Gullett (deceased)." In the space for her signature she signed "Maxine Gullett." With the Form 1040, which was headed "Amended Return," she filed a Schedule C, "Profit (or Loss) from Business or Profession," in the name of "Maxine Gullett." Petitioner's principal business

[2] Petitioner signed this form on May 28, 1963. However, the form was marked as received by the district director of internal revenue, Cincinnati, Ohio, on July 2, 1963.

activity was reported to be "Industrial Insurance Consultant." Gross receipts for the period "5/14–12/31/62" were reported to be $56,285.75.[3] Cost of labor, supplies, and other deductions totaled $26,734.90, and net income from petitioner's occupation was reported to be $29,550.85. She itemized personal deductions totaling $3,011.07, claimed one exemption, and reported income tax and self-employment tax liabilities in the amount of $10,930.07. She claimed credit for income tax paid in the total amount of $17,496.87, comprised of the amount of $8,000 paid on the 1962 declaration of estimated tax, and the amount of $9,496.87, representing "Amount Paid with original return." Petitioner claimed an overpayment of income tax for 1962 in the amount of $6,566.80, which petitioner requested to be applied to her estimated tax for 1963.

Also, on or about July 2, 1963,[4] petitioner filed with the district director of internal revenue, Cincinnati, Ohio, a Form 1040 for the period January 1, 1962, to May 14, 1962, in the name of "Virgil (Deceased 5/12/62) Gullett." It was indicated on the Form 1040 that the taxpayer was "Married filing separate return." The form was headed "Amended Return" and attached was a form, Schedule C, "Profit (or Loss) From Business or Profession" in the name of "Virgil Gullett (Deceased)" whose business was reported to be "Industrial Insurance Consultant." Gross receipts of the business were reported in the amount of $72,507.75; supplies and other business deductions in the amount of $45,870.42; and net income of the business in the amount of $26,637.33. On page 1 of the Form 1040 was reported the net income in the amount of $26,637.33; a loss (carryover) in the amount of $155.66; itemized personal deductions in the amount of $3,750.89; one exemption; and taxable income in the amount of $22,130.78. Income and self-employment taxes were shown to total $8,682.76 which was reported to be the tax liability due. In the space for the taxpayer's signature petitioner wrote "Virgil Gullett, deceased by Maxine Gullett."

On December 30, 1963, an officer in the office of the district director of internal revenue, Cincinnati, Ohio, wrote petitioner the following letter:

DEAR MRS. GULLETT:
Please forward to this office a certified copy of the Court Order under which you qualified as administrator or executor of the estate. The certificate must

---

[3] This is the same gross income reported on the Form 1041 originally filed for the estate of Gullett. Petitioner apparently had concluded by the time she filed the amended return that the business had been conducted by her in her individual capacity after Gullett's death rather than for Gullett's estate. It makes no difference in this proceeding who was originally entitled to the income because petitioner received it all as sole distributee of Gullet's estate if not in her individual capacity.

[4] Petitioner signed the Form 1040 on May 28, 1963. It was marked as received by the district director of internal revenue, Cincinnati, Ohio, on July 2, 1963.

bear a current date, or a notation by the clerk of the court stating that it is still in full force and effect.

In order to process the separate amended returns we must also have a statement disavowing the joint return as administrator.

The information requested should be furnished within twenty days. No further action will be taken regarding the amended returns until such information is submitted.

A copy of this letter must accompany your reply or any other documents mailed to this office.

Very truly yours,

On January 24, 1964, petitioner executed the following affidavit:

STATE OF OHIO

SS:—

FRANKLIN COUNTY

Maxine Gullett, being first duly sworn, as the Administratrix of the Estate of Virgil Lowell Gullett, on behalf of said estate hereby disavows, cancels and rescinds the 1962 income tax return filed in April, 1963, as a joint return under the name Virgil (deceased, 5/12) and Maxine Gullett.

The undersigned further, as an individual taxpayer and not in her capacity as Administratrix, disavows, cancels and rescinds the aforesaid tax return.

(S)    Maxine Gullett
MAXINE GULLETT, individually and as Administratrix of the Estate of Virgil Lowell Gullett, Deceased

On March 28, 1966, the clerk of the Probate Court, Franklin County, Ohio, certified that the "Letters of Authority," issued by the Probate Court to petitioner enabling her to act as administratrix of Gullett's estate, were "in full force and effect" as of March 28, 1966.

On May 13, 1964, the district director of internal revenue, Cincinnati, Ohio, notified petitioner of a proposed disallowance of her claim for refund of income tax for 1962 in the amount of $6,566.80.[5]

In the statutory notice issued to petitioner and the estate, respondent determined that there is to be added to taxable income reported in the amount of $44,866.56,[6] the amount of $2,978.35,[7] representing an increase in income from the business of representing claimants before the Industrial Commission, and the amount of $225.65, representing disallowed personal deductions. The deficiency for 1962, determined by respondent in the amount of $2,115.96, resulted.

Also attached to the notice of deficiency was a Treasury Department Form 885–F, Self-Employment Tax Adjustment, in which Maxine Gullett was designated as the self-employed taxpayer and self-

---

[5] Apparently, respondent treated petitioner's amended return for 1962 as a claim for refund.

[6] This was the taxable income as reported in the purported joint income tax return filed Apr. 10, 1963.

[7] In petitioner's amended return of July 2, 1963, this increased business net income was reported.

employment tax of $225.60 was determined to be due, with the explanation that "Income [$29,550.85] had previously been reported as belonging to the estate of taxpayer's deceased husband. This income has been determined to be that of this taxpayer." Maxine had included the self-employment tax in her amended return.

### ULTIMATE FINDING OF FACT

The purported joint return for "Virgil (deceased 5/12) and Maxine Gullet," filed on or about April 10, 1963, was made by petitioner in her individual capacity and, with respect to the decedent Gullett, in her capacity as administratrix of the estate of Virgil Gullett, and petitioner intended that it be a joint return for herself for the calendar year 1962 and for Virgil Gullett, deceased, for the period January 1, 1962, until the date of Gullett's death, May 12, 1962.

### OPINION

This controversy arises because of the fact that Virgil Gullett's estate was settled as being insolvent and, Maxine having paid all the tax for the year 1962 from her personal bank account, respondent cannot now collect the tax due on Gullett's separate income in 1962, earned from the first of the year until his death, from his estate. If the original return filed on or about April 10, 1963, in the names of "Virgil (deceased 5/12) and Maxine Gullett" was a valid joint income tax return for 1962 for Gullett and Maxine, then Maxine is jointly and severally liable for the tax due on their joint income for the year, including the deficiency determined by respondent resulting from adjustments recognized by Maxine to be correct in her amended return, and the tax paid by Maxine can be applied on that liability. On the other hand, if the above return was not a valid joint return for Gullett and Maxine, then Maxine owes only the tax reported to be due on her separate return filed July 2, 1963,[8] and is entitled to a refund in these proceedings of the excess of the tax she paid over that amount of tax.

Section 6013(a), I.R.C. 1954,[9] set forth in the margin,[10] provides that a husband and wife may make a single Federal income tax return jointly. Engrafted upon this general rule are refinements pertaining

---

[8] Maxine included in her amended return the additional net income from the business resulting from the adjustments determined by respondent in his notice of deficiency. So far as appears from this record respondent has not asserted transferee liability against Maxine as sole distributee of Gullett's estate—at least we are not concerned with transferee liability in this proceeding.

[9] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise noted.

[10] SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

(a) JOINT RETURNS.—A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below:

to income tax returns when one spouse dies during a taxable year which began on the same date for both spouses.

Section 6013(a)(2) [11] provides that under such circumstances the joint return of the deceased and surviving spouses can be made with respect to the taxable year of each; that is for the entire year of the surviving spouse and for the short taxable year of the decedent ending on the date of his death. See sec. 1.6013–1(d), Income Tax Regs.

Section 6013(a)(3) [12] provides that, in the case of death of one spouse, the joint return with respect to the decedent may be made only by his executor or administrator, except that such joint return may be made by the surviving spouse with respect to both himself and the decedent if (1) no return for the taxable year has been made by the decedent, (2) no executor or administrator has been appointed, and (3) no executor or administrator has been appointed before the last day prescribed by law for filing the return of the surviving spouse. If an executor or administrator is appointed after a joint return is made by the surviving spouse, the executor or administrator may disaffirm the joint return by filing a separate return for the decedent within 1 year after the return of the surviving spouse was due, in which case the joint return made by the surviving spouse shall constitute his separate return.

If a joint return is made, the liability of the taxpayers shown on the return is joint and several. Sec. 6013(d)(3). Except as provided in section 6013(a)(3), with respect to disaffirmance by a subsequently appointed executor or administrator, if a joint return is made, separate returns may not be made after the time for filing the return of either has expired. Sec. 1.6013–1(a), Income Tax Regs.

Respondent contends that petitioner is jointly and severally liable for the tax shown to be due on the Form 1040 filed on or about April 10, 1963, and for the deficiency determined by him, the amount of which has not been contested. Respondent maintains that the Form 1040 constitutes a valid joint return for petitioner for the calendar year 1962

---

[11] SEC. 6013(a). (2) no joint return shall be made if the husband and wife have different taxable years; except that if such taxable years begin on the same day and end on different days because of the death of either or both, then the joint return may be made with respect to the taxable year of each. The above exception shall not apply if the surviving spouse remarries before the close of his taxable year, nor if the taxable year of either spouse is a fractional part of a year under section 443(a)(1);

[12] SEC. 6013(a). (3) in the case of death of one spouse or both spouses the joint return with respect to the decedent may be made only by his executor or administrator; except that in the case of the death of one spouse the joint return may be made by the surviving spouse with respect to both himself and the decedent if no return for the taxable year has been made by the decedent, no executor or administrator has been appointed, and no executor or administrator is appointed before the last day prescribed by law for filing the return of the surviving spouse. If an executor or administrator of the decedent is appointed after the making of the joint return by the surviving spouse, the executor or administrator may disaffirm such joint return by making, within 1 year after the last day prescribed by law for filing the return of the surviving spouse, a separate return for the taxable year of the decedent with respect to which the joint return was made, in which case the return made by the survivor shall constitute his separate return.

and for Gullett for the period January 1, 1962, to the date of his death, May 12, 1962; that petitioner signed the form as administratrix of Gullett's estate and also in her individual capacity; that petitioner, by executing and filing the Form 1040 in the joint names of Gullett, deceased, and herself, "manifested an intent that she be jointly and severally liable for any deficiency in tax due thereon"; and that petitioner cannot escape liability for the tax due on the joint return by attempting to file individual returns for herself and Gullett after the due date of her return for 1962.

Petitioner does not dispute that she intended the return of April 10, 1963, to be a joint return for herself and her deceased husband, but she vigorously contends that she did not sign the return as administratrix of Gullett's estate, but only as surviving spouse, and therefore the return was not a valid joint return under section 6013(a)(3) but must be treated as her separate return, which she was at liberty to amend by her separate return filed July 2, 1963, and that she is not jointly and severally liable on the purported joint return. Petitioner also claims that, having been discharged as administratrix on March 19, 1963, before the joint return was made, she had no authority to make the return as administratrix and, in addition, that under Ohio law she had no authority as administratrix, in any event, to make a joint return with respect to the decedent without the express authority of the Probate Court.

Turning to petitioner's first point, we cannot agree that she did not sign the joint return with respect to Gullett in her capacity as administratrix of his estate. Petitioner testified that she did not sign the return as administratrix because she did not think she had authority to do so after she had filed her final settlement report and had been discharged by the Probate Court. This testimony is unconvincing in the light of the fact that on or about the same time she filed a Form 1041 for the estate of Gullett as administratrix, and has since certified on several occasions that she was acting in her capacity as administratrix of the estate.

It is true that nowhere on the face of the joint return was it specifically indicated that petitioner was acting in her capacity as administratrix of Gullett's estate, while her signature on the fiduciary return for the estate of Gullett was followed by the typed word "Administratrix." But this single discrepancy on the joint return carries little weight when we consider that the two returns were prepared in typewritten form by an accountant, and that the fiduciary return was captioned "Estate of Virgil Gullett" and the signature line indicated that it was for the signature of the fiduciary, while the joint return was captioned in the names of the two individuals and the signature line indicated that it was for the signatures of both of the taxpayers if it was a joint

return. The accountant who prepared the return typed in the word "Administratrix" after the space for petitioner's signature on the fiduciary return while he simply indicated on the joint return that Maxine was supposed to sign the return in two places.

The accountant was not called as a witness so we do not know why he did not type in the word "Administratrix" under or following the space where petitioner was to sign Gullet's name on the joint return. Nor are we convinced that petitioner signed the joint return in the manner she did because she did not think she had authority to sign as administratrix. We believe petitioner signed the joint return as she did because it called for Gullet's signature rather than the signature of the fiduciary of his estate.

There can be no question that petitioner intended the return to be a joint return and that insofar as she was concerned she was executing a valid joint return for both herself and the deceased Gullett. It was unmistakably indicated at several places on the return that it was intended to be a joint return for petitioner and decedent; and petitioner does not deny this intent. As was the case in *John M. Eversole*, 46 T.C. 56, the issue here is not *who* signed the return but *how* (in what capacity) it was signed; there is no question that petitioner signed it and that at no time was there anyone else authorized to sign it as representative of the estate. We need not presume from the fact alone that petitioner did not clearly indicate that she was signing in a representative capacity that she was not signing in such capacity.

Petitioner was required by law to file a return for Gullett for his short taxable year, in her capacity as fiduciary of his estate. The joint return was the only timely return so filed. The assumption that she was intending to perform the duties required of her by law in her fiduciary capacity, plus the unquestioned intent on her part as an individual to file a joint return, thoroughly convinces us that she intended to sign the joint return with respect to Gullett in her capacity as administratrix, and we have so found as an ultimate fact. Petitioner cannot now be heard to disavow the benefits and/or liabilities she so obviously intended to assume when she filed the joint return because of the fact that she did not clearly indicate on the return that she was signing the return, with respect to Gullett, in her capacity as administratrix of his estate.

Petitioner also claims that the joint return was invalid as a joint return for the decedent because (1) she had already been discharged as administratrix by order of the Probate Court, and (2) because she had no authority to sign a joint return for Gullett without express authority from the Probate Court.

With regard to the first point we think it is clear under Ohio law, and in common sense, that the mere entry of an order by the Probate

Court approving a final settlement of an administrator's accounts and discharging him does not necessarily relieve the administrator of all authority to perform functions in behalf of the estate required by law. It was held in *Taylor, et al.* v. *Thorn, Adm.,* 29 Ohio St. 569 (1876), that the filing of what purports to be a final account by a fiduciary does not extinguish his trust; nor does it end his powers nor terminate his duties. An order that would remove an executor from his trust would be based on a finding that the executor has discharged all his duties. *Weyer* v. *Watt,* 48 Ohio St. 545, 28 N.E. 670. See 22 Ohio Jur. 2d, Executors and Administrators, secs. 79 *et seq.;* 24 Ohio Jur. 2d, Fiduciaries, secs. 301 *et seq.*

Petitioner's second point under this argument is that under Ohio law an executor or administrator of an estate would at no time be authorized to file a joint return in behalf of the decedent without the specific authority of the Probate Court because it would involve assuming a potential obligation for the estate for which it would not otherwise be liable. Petitioner's only support for this theory was the testimony of an admittedly well-qualified Ohio lawyer that in his opinion such was the case under Ohio law. The witness cited no provision of the Ohio Code and no Ohio cases to support this opinion, and we have found none from a somewhat cursory examination of the Ohio law, albeit we recognize there is some logic in the argument. However, we need not in this case decide this point because we are not here concerned with what the Ohio Probate Court might rule if the executor's actions in signing a joint return for a decedent were questioned by beneficiaries or creditors of his estate; we are not here concerned with a liability of the estate; petitioner, by not prosecuting the tax case for the estate, has conceded that the estate is liable for the additional tax determined by respondent to be due. Instead the question is whether petitioner can rely on such a hypothetical argument to nullify the effect for Federal income tax purposes of the action she took, which action she was specifically authorized to take under the internal revenue laws. Petitioner's witness did not testify that a fiduciary's action in signing a joint return for a decedent would be void; in fact he acknowledged that under some circumstances it would probably be approved by a Probate Court. Under such circumstances we do not believe we are required to look to Ohio law in determining the validity or effect of petitioner's actions for Federal income tax purposes, and we so conclude.

In addition to the above, we think petitioner's position is further undermined by the opinion of the appellate court in *Hayes* v. *Commissioner,* 161 F. 2d 689, affirming 6 T.C. 914, wherein the Court held, under strikingly similar facts although under prior law, that where a surviving spouse made and filed a joint return for herself and her

deceased spouse, with the intention that it take effect as a joint return, she became jointly and severally liable for the tax due thereon, and could not later be heard to deny that the return was binding upon her on the ground that her husband's estate was not bound thereby. While the circumstances there were somewhat different, the deceased husband having died after the end of the taxable year but before the return was due, and the case was decided prior to the adoption of section 6013 and its predecessor section in the 1939 Code, the principle enunciated therein would still be applicable to petitioner herein.

We conclude that the joint return made and filed by petitioner on or about April 10, 1963, was a valid joint return for petitioner and her deceased husband and that petitioner is jointly and severally liable for the tax due thereon.

*Decision will be entered for the respondent.*